UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NS BRANDS LTD. d/b/a NATURE SWEET TOMATOES, § § § | |
| Plaintiff, § | C.A. NO.: 1:19-cv-00375-JJM-PAS |
| § v. § § | |
| Y FARMS LLC, and ERIC GUZMAN, § § | |
| Defendants. § | |

## DEFAULT JUDGMENT

This Court is presented with Plaintiff's Motion for Default Judgment. Having reviewed the record and carefully considered the Motion and applicable law and being otherwise duly advised in the premises,

**IT IS HEREBY ORDERED AND ADJUDGED THAT:**

Plaintiff's Motion for Default Judgment is GRANTED to the extent stated below.

### I. BACKGROUND

1. The cause of action is a collection for unpaid invoices for the purchase of produce filed by the Plaintiff pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. 499 *et seq.* ("PACA"). The Plaintiff seeks to recover, liquidated damages, court costs, and interest on these unpaid invoices. [DE 1-1]

2. Due to Defendant's failure to appear, answer, or otherwise plead to the Complaint, the Clerk entered default on December 19, 2019. [DE 26]

3. Between February 22, 2019 and April 15, 2019, Plaintiff sold to Defendants, in interstate commerce, eleven (11) loads, as set forth in the respective invoices included in Exhibit A to the Complaint. [DE 1-1]

4.  The Plaintiff duly shipped and delivered to the Defendants the kind, type, and quantity of produce listed in the above referenced invoices, all as required by PACA and the United States Department of Agriculture regulations issued pursuant thereto.

5.  At the times that the produce was delivered to and accepted by the Defendants, the Plaintiff became a beneficiary of the trust of assets held by Defendants pursuant to their duties as Statutory Trustees under the PACA Statutory Trust contained in 7 U.S.C. §499e(c). Such assets were and still are composed of Plaintiff's produce, all perishable agricultural commodities held by Defendants, all proceeds of Defendants' sales of all perishable agricultural commodities, and all assets which the Defendants have acquired with the proceeds of such commodities.

6.  At the times that Plaintiff's produce shipments were delivered, Defendants accepted and exercised complete dominion and control over the produce.

7.  Defendant Y Farms LLC, while under the direction and control of the Individual Defendant, failed and/or refused to pay Plaintiff for the produce received and accepted, yet continued to hold and use assets constituting the PACA Statutory Trust which were to be held for the Plaintiff's benefit.

8.  Pursuant to PACA and the statutory trust contained therein, Defendant Y Farms LLC was, as the named purchaser of Plaintiff's commodities, the statutory trustee for the benefit of Plaintiff with respect to the assets it derived from its operation in the produce business, including, but not limited to all such commodities delivered to, and received and accepted by Defendant Y Farms LLC.

9.  The Individual Defendant Eric Guzman was and is the principal, manager, and person holding the primary position of control over Defendant Y Farms LLC and its assets, and

he exercised primary operational control over said entity, including its sales, investments, and payment practices.

10. The Individual Defendant was at all times under statutory obligation to insure that Defendant Y Farms LLC complied with its statutory obligations, including but not limited to its fiduciary obligations under the PACA Trust, and were obligated to protect the assets of said corporation from dissipation, including and especially the PACA Trust *res* being held by Y Farms LLC for the benefit of Plaintiff as above alleged, and was responsible for causing said company to fulfil its obligations to Plaintiff in accordance with the PACA and the contracts of sale under which said Defendants obtained Plaintiff's commodities and services.

11. The Individual Defendant has dissipated PACA Trust assets which by law were to be held in order to promptly pay the Plaintiff. Additionally, Eric Guzman has commingled assets which comprised part of the PACA Trust with his own personal assets or has used PACA Trust assets held in trust for Plaintiff to make payments or investments for himself and/or has taken portions of said Trust *res* and used such assets for his own benefit.

12. Under the terms of the oral and/or written contracts between the parties, Defendants were required to promptly pay Plaintiff the agreed sales price of the commodities duly delivered to and accepted by them in the total sum of $216,374.40 plus prejudgment interest at an annual rate of 12%, as well as the costs incurred in this litigation.

13. The Defendants in violation of their statutory duties under PACA and in breach of their contracts with Plaintiff have failed to pay for the commodities ordered, received, and accepted by them, in the sum of $216,374.40 plus interest and costs of suit.

## II. LEGAL STANDARD

14. Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. However, a "'defendant's default does not in itself warrant the court entering a default judgment.'" *DirecTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

15. Granting a motion for default judgment is within the trial court's discretion. *See Nishimatsu*, 515 F.2d at 1206. Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered. *See id.*; *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint and is therefore established by the entry of default..." (alterations added; citation omitted)).

16. If the facts in the complaint are sufficient to establish liability, then the Court must determine the appropriate amount of damages. *See Petmed Express, Inc. v. Medpets.com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). Where all the essential evidence is on record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone...¶

17. We have held that no such hearing is required where all essential evidence is already of record." (alteration added; citations omitted)).

### III. ANALYSIS

18. In 1930, Congress enacted PACA to promote fair business practices in the marketing of perishable agricultural commodities. 7 U.S.C. § 499a, *et seq.*; *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997). In its original form, the PACA statute was intended

4

to provide a remedy to farmers against the "sharp practices" of unscrupulous brokers in perishable commodities. *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 780 (7th Cir. 1991). PACA therefore requires purchasers of perishable commodities to make "full payment promptly" to its perishable commodities suppliers. *Id.*; 7 U.S.C. § 499b(4). Failure to comply with the "fully payment promptly" provisions exposes the violator to civil liability in favor of seller.

19. In 1984, PACA was amended to provide additional protections to sellers of perishable commodities. In particular, Congress recognized that sellers of perishable commodities were unsecured creditors and therefore received little protection vis-à-vis secured creditors in the event the buyer failed to pay. *Hull* at 780; *Agri-Sales, Inc. v. United Potato Co. Inc.*, 436 F.Supp. 2d 967, 971-72 (N.D. Ill. 2006); H.R. Rep. 98-543, 98th Cong., 1st Sess., reprinted in 1984 U.S.C.A.A.N. 405. The 1984 PACA amendments therefore elevated the interests of sellers of perishable commodities superior to those of secured creditors. In addition, the buyers of perishable commodities hold the purchased produce and any proceeds from the sale of the produce in floating non-segregated trust for the benefit of all unpaid perishable commodity suppliers. *Id.*; § 499e(c)(2); 7 CFR § 46.46(b).

20. The PACA statute establishes that the seller's trust rights occur automatically upon the buyer's receipt of the perishable commodities. *Id.* To perfect their trust rights, the seller may either (i) provide written notice of its intent to preserve its trust within 30 calendar days after payment was due or (ii) include a notice of intent to preserve trust rights through its billing or invoice statements. § 499e(c)(4). The Plaintiff in this case included the required language on its invoices. [DE 1-1]

21. PACA authorizes two distinct civil remedies. A private party may enforce the statutory trust established under 7 U.S.C. § 499e(c)(1)-(4) and/or seek remedy for the PACA

merchant's failure to properly account and promptly pay for the sale of perishable products as provided under 7 U.S.C. § 499b(4). Such liability claims may be enforced by a complaint to the Secretary of Agriculture or suit in any court of competent jurisdiction. The statute particularly specifies that the "several district courts of the United States are vested with jurisdiction specifically to ascertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust." § 499e(c)(5).

22. The PACA statute also provides that, "commodities received...in all transactions, and all inventories of food or other products derived, and any receivables or proceeds from the sale of such commodities or products, shall be held...in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received." § 499e(c)(2).

23. All of Defendant Y Farms LLC's assets are presumed to be in the PACA trust. In one of the first decisions to analyze the PACA trust provisions, *In re: Fresh Approach*, 51 B.R. 412, 422 (Bankr. N.D. Texas 1985), the court noted that the PACA was modeled on the Packers and Stockyards Act [7 U.S.C. § 181, *et seq.*], which created a "floating non-segregated statutory trust" to which claimants need not trace funds. *See, Horizon Marketing et. al. v. Kingdom Int'l Ltd.*, et. al., 244 F. Supp.2d 131, 140 (E.D.N.Y. 2003); *Tamura & Antle, Inc. et. al. v. Packed Fresh Produce et. al.*, 222 F.3d. 132, 139 (3rd Cir. 2000). This floating trust, as the court held in *First State Bank v. Gotham Provision Co.*, 669 F.2d 1000, 1011 (5th Cir. 1982) ("Gotham"), includes all commingled funds: "[W]here trust funds are commingled with funds not subject to the trust, a lien on the entire commingled fund exists for the benefit of the beneficiaries of the trust." The only burden on the unpaid cash sellers is to prove the balance due to them and the

existence of a floating pool of commingled inventories. *First State Bank v. Gotham Provision Co.*, 669 F.2d 1000, 1011 (5th Cir. 1982).

24. The PACA trust includes produce inventories, inventories of other products acquired from produce, accounts receivable from produce and the proceeds derived of such receivables. *See, Movsowitz & Sons of Florida, Inc. v. Scotiabank*, 447 F.Supp.2d 156, 162-63 (D.P.R. 2006). Further, the PACA Trust includes all assets the Defendants procured with PACA trust assets. *See, In re Kornblum*, 81 F. 3rd 280, 286 (C.A. 2, NY 1996), deeming interest in a 9 year lease of units in the Hunts Point Market as PACA trust property because PACA trust assets were used purchase the units; *Ger-Nis Intern., LLC v. FJB, Inc.*, 2008 WL 2600074 (S.D.N.Y., 2008), "The Non-PACA Claimants bear the burden of proving that the Hunt's Point proprietary leases are not PACA trust assets; *Lone Star Milk Producers, Inc. v. Litzler*, 370 B.R. 671-680 (Bankr. N.D.TX 2007); and *Sanzone-Palmisano Co. v. M. Seaman Enterprises, Inc.*, 986 F.2d 1010, 1014 (6th Cir. 1993).

25. As a produce dealer, Defendant Y Farms LLC's assets derived directly or indirectly from produce sales, or proceeds of those sales are subject to the PACA trust, and the trust includes non-produce assets acquired from produce sales. The PACA trust is not limited to merely produce inventory or cash or accounts receivable from produce sales. The PACA trust has even been extended to casualty insurance proceeds from insurance policies which were purchased with produce revenue. See *Sam Wang Produce, Inc., v. EE Mart FC, LLC*, 2010 WL 605082 p. 3 (E.D. Va. 2010).

26. The scope of the PACA trust includes all assets acquired by Defendant Y Farms LLC from the inception of Y Farms's PACA trust. See, *J.A. Besteman Co. v. Carter's, Inc.*, 439

F.Supp.2d 774, 778 (W.D. Mich. 2006). It is *irrelevant* the date on which any particular PACA trust creditor's claim first arose, the trust extends to all assets of Defendant Y Farms LLC.

27.     An individual corporate officer who fails to protect PACA trust assets may be found to have breached the fiduciary duty of care owed to the trust beneficiary. *Weiss-Buy Services. v. Paglia*, 411 F3d. 415, 421 (3rd Cir. 2005); *Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 351 (5th Cir. 2000)(holding that individual shareholders, officers, or directors of a corporation who are in a position to control trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA). Trust assets need not be segregated, however, and accounts receivable are included in the calculation of assets available to the beneficiary. 7 U.S.C. § 499e(c)(2); 7 C.F.R. § 46.46(b). The trustee must also see to it that the assets are made "freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(d)(1). In explaining its regulations, the U.S. Department of Agriculture notes that, "[i]t is the buyer's or receiver's responsibility as trustee to ensure that it has sufficient assets to assure prompt payment...." 49 Fed. Reg. 45738 (Nov. 20, 1984).

28.     PACA is a unique statute because it creates shareholder and individual liability in addition to the buying entity's liability. The Fifth Circuit has held that liability for failing to comply with the trust provisions falls first to the licensed commission merchant, dealer, or broker of the perishable commodities. *Golman-Hayden Co.*, Inc. 217 F.3d 348 (citing *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280 (9th Cir. 1997)); see also, *Bronia, Inc. v. Ho*, 873 F.Supp. 854 (S.D.N.Y. 1995); *Morris Okun, Inc. v. Harry Zimmerman*, 814 F.Supp. 346 (S.D.N.Y. 1993); *Weis-Buy Services, Inc. v. Paglia, et al.*, 411 F.3d 415 (3rd Cir. 2005); In re Snyder, 184 B.R. 473 (D. Md. 1995); but see, *Farm-Wey Produce, Inc. v. Wayne L. Bowman Co., Inc. et al.*, 973

F.Supp. 778 (E.D. Tn. 1997). If the assets of the commission merchant, dealer, or broker are insufficient to satisfy the PACA claims, then individual shareholders, officers or directors in a position to control the PACA trust assets and who failed to do so may be held secondarily liable for failure to preserve the PACA trust assets. *Golman-Hayden*, 217 F.3d at 351.

29. Individual liability is not derived from the direct operation of the statute or "piercing of the corporate veil". Rather, common law principles of breach of trust are applied. *Golman-Hayden*, 217 F.3d at 351; *Weis-Buy*, 411 F3d at 421 (citing *Morris-Okun*, 814 F.Supp. 346, 348 (S.D.N.Y. 1993)); *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co., Inc., et al.*, 336 F.3d 410 (5th Cir. 2003). A person in control of PACA trust assets has a duty to "exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property." Weis-Buy, 411 F.3d at 421. Therefore, a person in control of PACA trust assets who fails to preserve them is liable in tort for breaching a fiduciary duty. This liability is distinct from individual liability associated with "piercing the corporate veil" where the liability protection of a corporate form is discarded due to fraud or a "shell" corporation is used by individual shareholders to advance their personal interests over those of the corporation. *Id.* This individual liability is another remedy against "sharp practices." The individual defendant in this case was a person in control of the of the PACA trust assets of Defendant Y Farms LLC and therefore individually, joint and severally liable for payment to the Plaintiff under the PACA trust.

30. **Pre-Judgment Interest**. A district court sitting in diversity must apply the law of the state in which the court sits in determining whether and how much pre-judgment interest should be awarded. *Fratus v. Republic Western Ins. Co.*, 147 F.3d 25, 30 (1st Cir. 1998). Even assuming there was no contract between Plaintiff and Y Farms by which Y Farms agreed to pay

Plaintiff prejudgment interest, there exist independent statutory grounds upon which to assess prejudgment interest against Y Farms. Plaintiff is entitled under R.I. Gen. Laws 3 9-21-10 to pre-judgment interest on the awarded damages at a rate of twelve percent per annum "from the date the cause of action accrued."[1] This Court agrees, finding "no compelling reason to ignore the directive of the statute" in this case. *Buckley v. Brown Plastics Mach., LLC*, 368 F. Supp. 2d 167, 170 (D.R.I. 2005).

31. Thus, a sufficient basis exists in the pleadings for default judgment to be entered against the Defendants.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Judgment is entered in favor of Plaintiff, NS Brand LLC d/b/a Nature Sweet Tomatoes and against Defendants Y Farms LLC and Eric Guzman –jointly and severally– in the principal amount of $216,374.40, along with taxable costs in the sum of $6,368.58 and discretionary pre-judgment interest in the sum of $12,377.80, for a total judgment amount of $235,120.78, plus post-judgment interest at the rate set forth by 28 USC §1961, all of which qualifies for protection under PACA, until satisfied, for which let execution issue.

2. Post-judgment interest shall accrue on the Judgment amount at the current post-judgment rate per annum pursuant to 28 U.S.C. §1961 from the date of the entry of this Judgment until paid in full.

3. Plaintiff NS Brands Ltd. d/b/a Nature Sweet Tomatoes shall have such writs and processes as may be necessary in the enforcement and collection of this Judgment.

---

[1] R. I. Gen. Laws § 9-21-10 (a) provides, in relevant part: "In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein."

**IT IS FURTHER ORDERED AND ADJUDGED** that all relief not expressly granted herein is denied. This Judgment disposes of all parties and all claims and is final for the purposes of appeal.

ENTERED this 21 day of January, 2020, in Providence, Rhode Island.

_____
HON. JUDGE JOHN J. MCCONNELL, JR.
UNITED STATES DISTRICT JUDGE

cc:   Counsel of Record and Defendants